UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                  Case No. 2:18-mj-30606

Alex Vinicio Ramirez-Salguero,        Sean F. Cox
                                                United States District Court Judge
    Defendant.
_____/

**<u>Opinion and Order Reversing November 28, 2018, Order Setting Conditions of Release (ECF No. 9), Revoking Bond (ECF No. 10) and Detaining Defendant Pending Trial</u>**

This matter is before the Court on the Government's appeal of Magistrate Judge Elizabeth Stafford's release order. The parties appeared before this Court for a hearing on December 3, 2018. For the reasons below, the Court finds that there is no condition or combination of conditions that will reasonably assure Defendant's appearance. Thus, the Court orders that Defendant shall be detained pending trial.

**BACKGROUND[1]**

Defendant is Guatemalan and illegally entered the United States in 2006. From 2006 until 2011, he resided in Detroit, Michigan. In 2011, immigration authorities found Defendant and instituted removal proceedings that ultimately resulted in a removal order. Defendant voluntarily left the United States and returned to Guatemala.

In 2012, immigration authorities again found Defendant in the United States, this time near

---

[1] At the hearings before Judge Stafford and this Court, the parties proceeded largely by proffer.

1

Gibraltar, Michigan. Before being deported, Defendant filed an application for asylum, which was denied.

Once again, Defendant's return to Guatemala was short-lived and he reentered the United States. From March 2014 until September 2018, Defendant lived in Colorado with his fiancee and child. In mid-September 2018, Defendant came back to the Detroit area, and began working at a restaurant.

On November 13, 2018, immigration authorities found Defendant outside of this restaurant. After the agents confronted him, he immediately fled into the restaurant, entered a stall in the women's bathroom, and stood on top of a toilet. The restaurant's manager authorized the agents to search the premises, and the agents detained Defendant. When the agents asked him why he ran, Defendant explained that he knew he was in the country illegally.

Defendant has been charged in a criminal complaint with one count of unlawful reentry after removal from the United States, in violation of 8 U.S.C. § 1326(a). (ECF No. 1). After his arrest, Defendant was temporarily detained and a detention hearing was set for November 21, 2018 before Magistrate Judge R. Steven Whalen. Pretrial Services prepared a written report, wherein it recommended that Defendant be detained. The hearing set for November 21, 2018 did not occur and was adjourned until November 28, 2018.

By November 28, 2018, Pretrial Services had reversed its recommendation. It concluded that Defendant "pose[d] a risk of nonappearance," but, instead of detention, it recommended that Defendant be released on a $10,000 unsecured bond with five special conditions: (1) Defendant must report to Pretrial Services as directed, (2) Defendant must surrender any international travel documents on the business day following release, (3) Defendant must not obtain any new

international travel documents, (4) Defendant must not leave the Eastern District of Michigan, and (5) Defendant must reside at the address he provided.

Judge Stafford conducted the November 28, 2018 hearing. After the parties proffered evidence, Judge Stafford ordered that Defendant be released consistent with Pretrial Services's recommendations.

The next day, the Government appealed Judge Stafford's order. Defendant filed a motion for bond (ECF No. 15), wherein he argued that he was entitled to bond pending trial. The Government responded. (ECF No. 17).

## ANALYSIS

Under 18 U.S.C. § 3145(a)(1), the Government may seek review of a magistrate judge's release order. The Court reviews the appeal *de novo*. *United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985).

A defendant may be detained pending trial only if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Generally, in order for a defendant to be detained, the Government "must prove risk of flight by a preponderance of the evidence," or "it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 Fed.Appx. 76, 77 (6th Cir. 2004). Here, only Defendant's risk of flight is at issue. To determine whether no condition or combination of conditions exists that will reasonably assure Defendant's appearance, the Court must consider the following factors from § 3142(g): (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against Defendant; (3) his history and characteristics; and (4) the nature and

3

seriousness of the danger to any person or the community that would be posed by Defendant's release.

## I. Defendant's Evidence Related to Guatemala and Possible Asylum Eligibility

Before turning to the § 3142(g) factors, the Court will explain how it considers Defendant's proffered evidence of the conditions in Guatemala and the danger he might face if he is deported back to his home country. Defendant asserts that his father was a political activist for an indigenous people's rights group in Guatemala. In 2009, he was murdered. Defendant tried to help Guatemalan law enforcement find his father's killer, but fled to the United States after receiving death threats. When Defendant was deported in 2011, the situation had not improved and he again fled to the United States after receiving death threats. The next time removal proceedings were instituted against Defendant, he applied for asylum. He was denied.

When he returned to Guatemala in 2013—after being deported from the United States for the second time—Defendant alleges that he narrowly escaped an attempt on his life. Defendant again decided to leave his home county. This time he went to Mexico, where he states he was kidnaped. His brother ransomed him, and Defendant returned to the United States.

Defendant also asserts that his mother was poisoned for political reasons.

Defendant states that his brother has applied for asylum and that Defendant plans to follow suit. Indeed, Defendant claims that, before he was arrested, he had scheduled a meeting with an immigration attorney for November 14, 2018—the day after he was taken into custody for the instant offense.

Defendant also provided two pieces of documentary evidence about the political climate of Guatemala: a news article and the United Nations High Commissioner for Refugee's Eligibility

4

Guidelines for Assessing the International Protection Needs of Asylum-Seekers from Guatemala.

With the exception of a few inconsistencies,[2] the Court currently has no reason to doubt Defendant's desire to seek asylum or his stated reasons for leaving Guatemala. The Court sympathizes with Defendant's position. But, for the purposes of this bond determination, the Court concludes that this proffered evidence has minimal value.

The executive branch—not the judiciary—has the discretion to grant asylum. *See, e.g., Nozadze v. Sessions*, 740 Fed.Appx. 476, 480 (6th Cir. 2018) ("The Attorney General has discretion to grant asylum to an alien who qualifies as a refugee under the Immigration and Nationality Act"); *See also*, 8.U.S.C. § 1101, *et seq*. Further, Congress has specifically listed the factors that a judicial officer shall consider when making a bond determination. *See* 18 U.S.C. § 3142(g) ("The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required...take into account the available information concerning [the factors listed in 18 U.S.C. § 3142(g)(1)-(4)]"). Thus, the Court will only consider the political climate of Guatemala, and Defendant's history in that country, to the extent either informs the Court's determination of whether Defendant is entitled to bond under 18 U.S.C. § 3142.

## II. The § 3142(g) Factors

The Government does not claim that Defendant is a danger to the community. Rather, the Government argues that there is no condition or combination of conditions that will reasonably assure Defendant's appearance at future proceedings. With this in mind, the Court now turns to the § 3142(g) factors.

---

[2] For example, Defendant claims that he fled to the United States after his father was killed in 2009. But he told Pretrial Services that he first came to the United States in 2006.

### A. Nature and Circumstances of the Offenses Charged

Defendant is charged with a felony. If convicted of illegal reentry after removal, he faces up to two years in prison. 8 U.S.C. §1326(a). This charge, however, does not have an element of violence, and there is no minor victim or controlled substances involved. Thus, this factor favors release.

### B. Weight of the Evidence

The weight of the evidence factor goes to Defendant's risk of flight. *See United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). Notably, Defendant has already fled in this case; he ran from immigration agents and hid in a bathroom. Thus, as Defendant conceded, this factor favors detention.

### C. Defendant's History and Characteristics

The Court has carefully considered the Defendant's history and characteristics. The Court acknowledges that Defendant is employed, has a stable residence, and has some family in this jurisdiction. Defendant has no criminal history or troubles with substance abuse. Although these facts weigh in Defendant's favor, they are heavily outweighed by several considerations.

First, Defendant is not legally within the United States, and the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") has issued a detainer for him. *See United States v. Salas-Urenas*, 430 Fed.Appx. 721, 723 (10th Cir. 2011) ("A defendant's immigration status and the existence of an ICE detainer are relevant to the detention decision as part of the history and characteristics of the defendant); *United States v. Valadez-Lara*, 2015 WL 1456530 at *6 (N.D.Ohio, March 30, 2015) (collecting cases and noting that "most courts have concluded the existence of an immigration detainer is a relevant factor for consideration when the court undertakes its assessment

6

of a defendant's risk of flight."). Defendant knows about his illegal status, as shown by his statements to immigration officials. He knows that he faces a possibility of deportation to Guatemala, a country to which he has no desire to return. Further, he knows that, even if he submits another asylum application, there is no certainty it will be granted. Thus, he as a strong incentive to flee to avoid deportation.

Second, Defendant does not have strong connections to the Eastern District of Michigan. He has lived in Colorado for the past four years. His fiancee and child still live in Colorado. *See* (ECF No. 15, PageID 33 ("At the time of his arrest, [Defendant] was *making plans* to relocate his fiancee and their son to the Detroit area") (emphasis added), and ECF No. 17, PageID 110 ("his wife and son are both currently residing in Colorado."). He has been back in Michigan for less than three months, and his current residence and employment are similarly short. To the extent that Defendant established connections to the Eastern District before September 2018, the significance of these connections is drastically undercut by his repeated departures and choice to live in Colorado.

Defendant attempts to assure the Court that he will stay in the Eastern District by arguing that the "tragic and traumatic circumstances that caused [him] to flee his homeland and seek refuge in this country provide ample reason to believe he has no intention to flee to Guatemala." The Court agrees that Defendant does not intend to flee to Guatemala. But Colorado might be attractive. Or any other place outside the Court's jurisdiction. The risk of flight does not apply to only one destination; it applies to the world.

Third, Defendant has not adhered to court orders in the past. On two different occasions, he has illegally reentered the United States while he was the subject of an immigration court's removal order. Although this behavior might be understandable, it still casts doubt on the Defendant's

7

likelihood to appear for his criminal proceedings.

Fourth, his history shows that he has no qualms about living in the United States illegally, as he has for roughly ten of the last twelve years. This history and lifestyle, at the very least, does not deter a decision to become a fugitive.

Thus, considering the proffered evidence as a whole, the Court concludes that Defendant's history and characteristics heavily favor detention.

### D.     Nature and Seriousness of the Danger Posed by the Defendant's Release

There is no evidence that Defendant would pose any danger to a person or the community if released. The Government conceded this point. Thus, this factor favors release.

### CONCLUSION AND ORDER

The Court has considered all evidence and arguments, including the briefing, Pretrial Service's written report, and the evidence proffered at the November 28, 2018 and December 3, 2018 hearings. The Court finds that the Government has established, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure Defendant's appearance at his criminal proceedings. Therefore, the Court REVERSES Judge Stafford's November 28, 2018 Order Setting Conditions of Release (ECF No. 9), REVOKES Defendant's Bond (ECF No. 10), and ORDERS that Defendant be detained in the custody fo the United States Marshal pending trial.

IT IS SO ORDERED.

                                                              s/Sean F. Cox
                                                              Sean F. Cox
                                                              United States District Judge

Dated:  December 4, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 4, 2018, by electronic and/or ordinary mail.

                                        s/Jennifer McCoy
                                        Case Manager